### WILLIS BAILEY v. ZANESVILLE (CITY) ET AL.

1. RULE IN DETERMINING CHARACTER OF CITY PROPERTY.

In determining whether a particular parcel of land, for purposes of assessment, is land in bulk or city lots, within the meaning of sec. 542 of the municipal code of 1869, now sec. 2269, Rev. Stat., regard must be had not merely to the recorded plat of the town, but to the size of lots generally in the municipal corporation; and where the property is not the size of lots generally in the city or in the neighborhood, it must be regarded as land in bulk.

2. PROCEDURE IN ASSESSING LAND IN BULK.

Before a municipal corporation can levy an assessment upon land in bulk, either according to appraised value, or according to the front foot, it must give to the land to be assessed the average lot depth in the neighborhood, and after having fixed the taxing district, the land must be given a value for taxation, in order that the limitations of sec. 2270, Rev. Stat., may be applied. The council is not permitted to depart from this rule or to levy an assessment by the front foot deeper than lots in the neighborhood or above the average value of lots in the neighborhood.

APPEAL.

WILSON, J.

The case of Willis Bailey against the city of Zanesville comes into this court on appeal. It was submitted upon an agreed statement of facts. The statement of facts, as it comes to us, is in the form of a finding of facts made by the judge who tried the case in the court below.

The plaintiff, in his petition, avers that, he is the owner of lot No 37 in the city of Zanesville, fronting on Maple Avenue 240 feet, being in depth 500 feet on one side and about 600 feet on the other, containing an

Bailey v. Zanesville.

area of about five acres of land; that this lot No. 37 is appraised for taxation, at the sum of $9,200; that on March 14, 1892, the city council passed a resolution to improve Maple Avenue, and on August 12, following, it passed the improving ordinance, specifying the manner in which the avenue should be improved. On September 12th succeeding, it passed an assessing ordinance, assessing the cost of this improvement, except two per cent. thereof, and except the cost of paving between the railway tracks, and the cost of paving at the street intersections, upon the abutting property on the avenue, by the foot front, at the rate of $4.26 per foot; that under this ordinance, it assessed plaintiff's property for $1,001.37; that this property was not subdivided into city lots, and that the average depth of city lots in the neighborhood was about 148 feet, and that the average assessed value thereof was about $9.36 per front foot. He avers that he has paid $600.18 on this improvement, and that the city is still claiming $400 from him under the assessment, and that unless restrained by the order of the court, the city clerk will certify, as he may under the ordinance, to the auditor of the county, the amount assessed and still unpaid, in order that it may be collected as other taxes, against him. He avers that he has paid all that he can be legally assessed for this improvement, and asks that the authorities may be restrained from collecting any further sum from him, as they threaten to do.

The city answers, denying that it has assessed the property beyond the limit allowed by law, and says that the property assessed is appraised at $9,200.00, and the assessment does not exceed twenty-five per cent. of that value; they deny that this lot is not subdivided, and say that it is a lot numbered and platted according to the plats of the city, and that it has been appraised as such. They also plead, as a further defense, that on June 1, 1897, they passed a re-assessing ordinance, finding that the first assessment was not legal, and that they then appraised the property of the plaintiff at $17.04 per front foot, and assessed him the one fourth of that sum, for the payment of this improvement.

A motion was made and sustained in the court below, to strike this last defense from the answer. That motion was not argued here, and this court has not found it necessary to pass upon the sufficiency of the defense. We have, however, considered it as one of the facts admitted in the case, and have applied the law to such state of facts.

The question raised here involves the construction of Secs. 2269 and 2270 Rev. Stat.

Section 2269 reads:

" In making special assessments, according to the valuation, the council shall be governed by the assessed value of the lots, if the land is subdivided and the lots are numbered and recorded; but if the lots are not assessed for taxation, or if there is land not subdivided into lots, the council shall fix the value of the lots or the value of front of such land to usual depth of lots, by the average of the two blocks, one of which shall be next adjoining on either side; and if there are no blocks so adjoining, the council shall fix the value of the lots or lands to be assessed so that it will be a fair average of the assessed value of other lots in the neighborhood, and if, in making a special assessment by the foot front, * * * by the abutting foot, there is land bounding or abutting upon the improvement not subdivided into lots, the council shall fix the depth of such lands so that it will be a fair average depth of the lots in the neighborhood, which shall be subject to such assessment * * *."

The court below found that this lot was land in bulk. The parties here have agreed to this as a fact in the case, notwithstanding the contention of the answer that it is not land of that character, and if that fact had not been conceded by the city, the law would so determine it under the authority of Springer v. Avondale, 35 Ohio St., 625. The doctrine of that case is, in determining whether a particular parcel of real estate was land in bulk within the meaning of sec. 542 of the municipal code of 1869, which is sec. 2269 Rev. Stat., regard must be had not merely to the recorded plat of the town, but to the size of the lots generally in the municipal corporation; so that, as matter of law, it must be decided that this was land in bulk, and not land divided into lots, because the size of this lot is not the size of lots generally in the city, or in the neighborhood.

The city, therefore, had in this case, land in bulk, upon which it was authorized and empowered to levy an assessment, and before it could do so, either according to the appraised value, or according to the foot front, it must give to the land assessed, a lot depth, and that lot depth must be what the average lot depth is in the neighborhood. After it has thus fixed the taxing district and designated the land which may be assessed for the improvement, never having had an assessed value for taxation, the city must give it a value. It is required to do that, in order that the limitation of sec. 2270 may apply, as that section provides : " In municipal corporations other than cities of the first class, or in incorporated villages in counties containing a city of the first or second grade of the first class, the tax or assessment specially levied and assessed on any lot of land, for any improvement, shall, in no case, amount to more than twenty-five per centum of the value of the property, as assessed for taxation."

The land must be assessed for taxation before it can be determined whether or not the assessment exceeds the limit which is prescribed by this section. Therefore, it was the duty of the council, after it determined the depth of the lots in this neighborhood and the depth of the land which could be assessed out of this land in bulk, to then determine what its assessed value for taxation should be. The power to determine the assessed value is not arbitrary. It must in every instance, whatever the method of assessment may be, be uniform and equal; in other words, where the land is in bulk, it must be governed by the assessed value of the lots in the blocks on the sides, or if there are no blocks on the sides, then in accordance with the assessed value of the lots in the neighborhood. The council is not permitted to depart from this rule in determining the value of the property for taxation. It would not be equitable, just, or legal to determine that when you levy an assessment by the foot front, you may levy it upon land in bulk deeper than the lots in the neighborhood or that you may value it at a price above the average price of the lots in the neighborhood as assessed for taxation, because it is an underlying and fundamental principle in the exercise of the power of assessment, that whatever rule is prescribed it must be uniform equal, and according to the benefits, so that all will be treated alike under the law.

Before the statute was in its present form, the Supreme Court, in Cincinnati v. Oliver, 31 Ohio St., 371, held: " The limitation upon the power of making assessments contained in sec. 542 of the municipal code, is applicable to assessments levied upon the property abutting on

the improvement in proportion to its frontage, as well as to assessments levied upon such property in proportion to its taxable valuation."

So the court there determined that if you make the assessment according to the valuation or according to the foot front, the power of the council is regulated by the provision as of this section. In the body of the opinion, Judge White says: " The mode of apportionment." *i. e.*, whether they levy by the foot front or according to the assessed value or according to the benefits, is not the means intended for ascertaining the extent of the area of the abutting property subject to assessment. And it seems to us to be wholly inadmissible to suppose that the legislature intended that the assessment upon the same tract or parcel of land, if levied according to its taxable valuation, should be limited to the usual depth of lots by the average of the two adjoining blocks; but if levied by the frontage, the assessment should extend through the entire tract without reference to its depth."

That construction of the statute, he says, is wholly inadmissible because it would be a violation of every princlple which should govern the assessment of property.

Now, with this view of the law, let us apply it to the facts in this case. The defendant, the city, is here admitting that the average depth of the lots in that neighborhood is 148 feet; that their average assessed value for taxation is $9.36. Notwithstanding these admissions, it says it passed a re-assessing ordinance, assessing this property $17.04 a front foot and 200 feet in depth.

Had it the power to do this? It appears that it was necessary to assess the property that much, in order to escape the limitations of sec. 2270. Is not this the exercise of an arbitrary power? The constitution directs the legislature to restrict, not to enlarge the powers of assessment, by municipal corporations, and all the provisions of the statutes in that behalf are restrictive in their nature, not enlarging, and must be so construed.

When the city passed an ordinance assessing the land in bulk for a depth greater than the average depth of the lots in the neighborhood and for an amount greater than the average valuation of the lots in the neighborhood, it exceeded its legal authority. It had no authority in law to assess this property at a valuation greater than the average valuation of the lots in the neighborhood, or to assess this land in bulk for a depth greater than the depth of the average lot in the neighborhood, and when it did so, it exceeded its authority, and for this reason its ordinance is void. We have reached this conclusion after a careful consideration of Parmelee v. Youngstown, 43 Ohio State, 161, and Findlay v. Frey, 51 Ohio State, 390.

The city is here admitting facts which show that if it had proceeded with its assessing ordinance in accordance with the law, it could not have valued this property, by the front foot, for a sum greater than $9.36 per foot. It is admitting that the plaintiff has already paid on the improvement, more than twenty-five per cent. of this amount, and notwithstanding these admissions, it is claiming the right by the assessing ordinance which we find to be illegal, to collect from him the further sum of $400.

We concede to it the power at any time, to pass a legal assessing ordinance, when the first ordinance is found to be illegal, but in doing so, it must be governed by the rules laid down in the statute; it must appraise this lot of land as other lots of land are appraised, so far as the

value is concerned, and it must assess to a depth, as other lands are assessed in that neighborhood; and when it has passed an ordinance in accordance with the law, it is authorized to assess twenty-five per cent. of the appraised value for taxation. But it is admitting a state of facts which discloses that it has already collected all it could assess under the law, and that being true, we think that the plaintiff has clearly made out a case in equity, which will justify this conrt in enjoining the city from collecting any further sum.

For these reasons, the decree will be for the plaintiff, accordingly.